[Tagged]



**ORDERED in the Southern District of Florida on October 17, 2016.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

IN RE:                                                          Case No. 15-31082 -EPK
                                                                       Chapter 11
**CCH JOHN EAGAN II HOMES, L.P.,**

      Debtor.
_____/
**FANNIE MAE,**

      Plaintiff,
v.                                                              Adv. Proc. No.: 16-01183-EPK

**CCH JOHN EAGAN II HOMES, L.P.,**

      Defendant.
_____/

<u>**ORDER ON MOTION TO DISMISS**</u>

This matter comes before the Court on the *Defendant's Motion to Dismiss and/or to Strike* [ECF No. 19] (the "Motion"). The Court has reviewed the Motion, the response, and the reply. As more fully presented below, the Court will dismiss the complaint only to the extent it requests relief based on *res judicata* and/or the Rooker-Feldman doctrine, and will otherwise deny the Motion.

CCH John Eagan II Homes, L.P., the debtor in this chapter 11 case, owns and operates a multi-family, low income apartment complex in Atlanta, Georgia. Fannie Mae, as successor to Arcs Commercial Mortgage Co., L.P., holds a claim against the debtor, alleged to exceed $5.3 million, secured by the debtor's apartment complex and substantially all assets of the debtor.

In connection with the secured financing now held by Fannie Mae, the debtor entered into a Replacement Reserve and Security Agreement. A copy of that agreement is attached to the complaint commencing this adversary proceeding. Among other things, that agreement required the debtor to make monthly payments to Fannie Mae for deposit to a fund called the Replacement Reserve. So long as there was no default under the agreement and the related loan documentation, the debtor was permitted to make periodic requests for disbursement from the Replacement Reserve for purposes specifically listed in the agreement. If the debtor was in default of its obligations under the agreement and the other loan documents, the debtor was not entitled to receive disbursements from the Replacement Reserve. The Replacement Reserve was to be used for major periodic maintenance of the apartment complex, such as roofing, exterior and interior building maintenance and the like, but not for daily upkeep of the project. The agreement contains a specific grant by the debtor of a security interest in the Replacement Reserve, to secure payment of the debtor's obligations under the loan documents. There is no dispute that Fannie Mae maintains and holds the Replacement Reserve. Fannie Mae's security interest in the Replacement Reserve is thus perfected by possession. Ga. Code Ann. § 11-9-313.[1]  Importantly, upon payment in

---

[1] Section 21 of the Replacement Reserve and Security Agreement provides that the agreement shall be governed by and construed in accordance with the laws of the jurisdiction in which the Property, as defined in the agreement, is located. In this case, that jurisdiction is Georgia.

full of the loan obligations, the agreement provides that the remaining balance in the Replacement Reserve is to be tendered to the debtor.

If the debtor is in default under the loan documents, Fannie Mae has the right to apply the Replacement Reserve in various ways, at Fannie Mae's discretion, including in partial satisfaction of the debtor's obligations to Fannie Mae under the loan documents. Based on the documents before the Court, Fannie Mae has never applied any portion of the Replacement Reserve in payment of any of the debtor's obligations to Fannie Mae under the loan documents.

In 2014, Fannie Mae noticed a default under the loan documents, accelerated its loan, and commenced foreclosure on the debtor's property under Georgia law. These actions resulted in litigation between the debtor and Fannie Mae in the Superior Court of Fulton County, Georgia. The debtor and Fannie Mae mediated their disputes, entering into a settlement agreement that was incorporated into a consent judgment entered by the Georgia state court. The parties later disputed whether the debtor had defaulted under the settlement, and that dispute was determined by the mediator pursuant to the parties' agreement. In general terms, the parties' settlement re-affirmed the existing loan documents with specific modifications. Importantly, nothing in the settlement agreement, the consent judgment, or the mediator's decision in any way amended the provisions of the loan documents with regard to the relative rights of the debtor and Fannie Mae as to the Replacement Reserve. The provisions of the loan documents relating to the debtor's ability to seek disbursements from the Replacement Reserve, the effect of a default by the debtor, and the resolution of the Replacement Reserve on full payment of the loan, all remain unchanged. The mediator's decision includes several provisions to the effect that the debtor would thereafter be in default if it did not perform specific requirements stated therein. However, neither the consent judgment nor the mediator's decision contains a specific finding

that the debtor was then in default of any provision of the loan documents or the consent judgment.  In short, no order that might be binding on this Court under the doctrine of *res judicata* or the Rooker-Feldman doctrine includes any finding with regard to the Replacement Reserve that is relevant to this adversary proceeding.

Fannie Mae alleges that in 2015 the debtor again defaulted on the loan, as modified by the settlement agreement, the consent judgment and the mediator's decision.  Fannie Mae then provided the debtor notice of the default and acceleration of the loan.  In that notice, Fannie Mae demanded payment of the accelerated sum.  The notice specifically noted the balance in the Replacement Reserve, listing it among assets that may be applied in payment of the loan, thus reducing the aggregate balance owing by the debtor.  Nothing in that notice, or in any other evidence before the Court, suggests that Fannie Mae at any time actually applied any part of the Replacement Reserve in partial satisfaction of its claim against the debtor.

As a result of the 2015 default, Fannie Mae noticed a non-judicial foreclosure of the debtor's property for December 1, 2015 under Georgia law.  The debtor responded to the foreclosure by filing a motion for temporary restraining order in the Superior Court of Fulton County, Georgia, by which the debtor sought to prevent the foreclosure sale.  After an evidentiary hearing, the Georgia state court denied the requested injunction by order entered December 1, 2015.  A copy of that order is attached to the complaint here.  Nothing in the Georgia state court order addresses the Replacement Reserve in any way.

The debtor filed a voluntary bankruptcy petition with this Court the same day the Georgia state court denied the debtor's request for an injunction, December 1, 2015.

Fannie Mae alleges that, after this case was filed, Fannie Mae discovered that the debtor entered into financing arrangements in December 2014 and February 2015, borrowing

$1.5 million.  Fannie Mae alleges that the debtor's actions constitute additional events of default under the loan documents with Fannie Mae.

On March 23, 2016, during this chapter 11 case, the debtor submitted to Fannie Mae its first request for a disbursement from the Replacement Reserve, asking for a total amount of $347,830.05.  On April 12, 2016, the debtor filed a motion seeking, among other things, an order of this Court directing Fannie Mae to disburse funds held in the Replacement Reserve to pay for the same costs previously listed in its March 23, 2016 request to Fannie Mae.  ECF Nos. 200, 201, 208. Fannie Mae responded by filing the complaint commencing this case.[2]

In this adversary proceeding, Fannie Mae seeks a declaratory judgment to the effect that the Replacement Reserve is not property of the bankruptcy estate, that the debtor has no interest in the Replacement Reserve and is not entitled to any disbursements from the Replacement Reserve as a result of the debtor's defaults under the Fannie Mae loan documents, and that Fannie Mae is free to apply the Replacement Reserve to its claim.  In the alternative, Fannie Mae seeks a declaratory judgment to the effect that the debtor's request to use the Replacement Reserve is barred by *res judicata* and/or the Rooker-Feldman doctrine.  Lastly, in the alternative, Fannie Mae seeks a determination that Fannie Mae is entitled to setoff or recoupment of the Replacement Reserve against its claim.

On April 21, 2016, the Court entered an order addressing the debtor's earlier motion seeking an order compelling Fannie Mae to disburse funds from the Replacement Reserve. ECF No. 216.  Among other things, that order reflects the agreement of the debtor and Fannie Mae that a portion of the Replacement Reserve, in the amount of $24,750, would be disbursed to the debtor to be used for enumerated repairs to the apartment project.  The order at ECF

---

[2] The Court notes this background information so as to provide the reader with a full picture of the status of this case.  The facts addressed in this paragraph were not presented in the Motion and briefing now before the Court and therefore are not considered in the present ruling.

No. 216 contains no finding addressing any matter relevant to the present adversary proceeding.[3]

Although not directly relevant to the present matter, on April 26, 2016, the debtor filed an adversary proceeding against Fannie Mae. ECF No. 227. Stating claims based in breach of contract, breach of the covenant of good faith and fair dealing, wrongful foreclosure, and a Georgia statutory claim for wrongful procurement of injury, the debtor seeks a monetary judgment against Fannie Mae. The complaint was later amended to include a count objecting to Fannie Mae's claim in this case. Adv. Proc. No. 16-01200-EPK, ECF No. 55. Other than the objection to Fannie Mae's claim the Court notes that it has, at most, only "related to" jurisdiction under 28 U.S.C. § 1334(b) over the claims presented in that other adversary proceeding.

The debtor's previous motion to compel Fannie Mae to disburse funds from the Replacement Reserve is no longer pending. However, the debtor filed a chapter 11 plan in which the debtor proposes to use the lion's share of the Replacement Reserve upon the effective date of the plan. ECF Nos. 319 and 380.

The debtor has moved to dismiss this adversary proceeding. ECF No. 19. Fannie Mae responded and the debtor filed a reply. ECF Nos. 23, 26. To a great extent, the arguments presented by the parties are so detached from a basic understanding of bankruptcy law that the Court is compelled first to address some central tenets of bankruptcy jurisdiction and the scope of the Bankruptcy Code.

Section 1334 of title 28 is the sole source of subject matter jurisdiction in bankruptcy. Subsection (a) of that provision grants to the district courts "original and exclusive

---

[3] These facts were not raised in the present Motion or briefing. The Court refers to its own prior order only to note that this Court has made no previous finding with regard to the estate's interest in the Replacement Reserve.

jurisdiction of all cases under title 11," and subsection (b) grants to the district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §§ 1334(a) and (b).

The district courts have exclusive jurisdiction "of all property, wherever located, of the debtor as of the commencement of [the] case, and of property of the estate."  28 U.S.C. § 1334(e)(1).  Consistent with more than 200 years of bankruptcy precedent in this country, subsection (e)(1) implements far-reaching, equitable bankruptcy jurisdiction over all property subject to administration in a bankruptcy case.  Such equitable jurisdiction over property is the core of bankruptcy jurisdiction.

All bankruptcy jurisdiction is initially lodged in the district courts.  Under 28 U.S.C. § 157(a), each district court may refer to the bankruptcy court "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." Thus, the district court may refer to the bankruptcy court any and all matters covered by 28 U.S.C. § 1334. This has been accomplished in every district in the United States by standing orders of reference. On March 27, 2012, the United States District Court for the Southern District of Florida issued a revised Order of Reference, Administrative Order 2012-25. That standing order refers to this Court any and all cases and proceedings covered by federal bankruptcy jurisdiction.

Not all matters referred to the bankruptcy court are subject to entry of final orders or judgments in the bankruptcy court. Congress decreed that "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11" referred to the bankruptcy court are subject to entry of final orders and judgments in the bankruptcy court. 28 U.S.C. § 157(b)(1). Thus, once referred to the bankruptcy court, the bankruptcy court has the statutory power to enter final orders and judgments in cases under title 11 and in "core" matters "arising under" or "arising in" cases under title 11. With regard to non-core

proceedings, the bankruptcy court may hear such proceedings but, absent consent of the parties, must then submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c).  If the parties consent in a non-core proceeding, the bankruptcy court may enter a final order or judgment. 28 U.S.C. § 157(c)(2).

Thus, absent consent of the parties, the statutory power of the bankruptcy court to enter final orders and judgments depends on whether the matter before the bankruptcy court is core or non-core. 28 U.S.C. § 157(b)(2) sets out a non-exclusive list of matters defined as core proceedings. In this provision, Congress exhibited its intent to provide to the bankruptcy court the broadest power to enter final orders and judgments that is consistent with the requirements of the Constitution. For a complete discussion of bankruptcy jurisdiction and the power of the bankruptcy court to enter final orders, the Court refers the parties to *British Am. Ins. Co. v. Fullerton (In re British Am. Ins. Co.).*, 488 B.R. 205, 218-21 (Bankr. S.D. Fla. 2013).  *See also Wellness Int'l Network, Ltd. v. Sharif,* 135 S. Ct. 1932 (2015).

Whether a particular proceeding is core or non-core — whether the bankruptcy court may enter a final order or judgment therein — has no impact on whether there is federal bankruptcy jurisdiction over the proceeding. The question of whether there is subject matter jurisdiction over an action pursued in connection with a title 11 case, and the question of which court may enter a binding order, are separate inquiries. The bankruptcy court may have subject matter jurisdiction over a proceeding under 28 U.S.C. § 1334, yet not have the statutory or constitutional power to enter a final order or judgment. In such a case, the district court may enter the binding order or judgment after review of proposed findings of fact and conclusions of law prepared by the bankruptcy court.  28 U.S.C. § 157(c)(1).

A debtor, particularly a corporate debtor, may be a party to a number of pre-bankruptcy contracts and leases.  After the entry of an order for relief in a case under title 11, such contracts and leases are not binding on the debtor except as specifically provided in

the Bankruptcy Code. Contracts deemed "executory contracts" and "unexpired leases" are subject to the provisions of 11 U.S.C. § 365. The debtor or trustee, as the case may be, has the power to assume or reject agreements covered by section 365, subject to time limitations for certain types of agreements. Pending such assumption or rejection, non-debtor parties to agreements covered by section 365 typically are bound by their terms but, unless specifically provided in the Bankruptcy Code, the debtor is not. Certain types of contracts are completely excluded from section 365, including all contracts relating to loans made or to be made to the debtor. 11 U.S.C. § 365(c)(2).

This is not to say that loan agreements and security agreements are not relevant to matters before the bankruptcy court. To the contrary, the terms of loan and security agreements are central to the determination of claims and the extent of and priority of security interests. *See, e.g.*, 11 U.S.C. §§ 502 and 506. Bankruptcy courts most often look to state law to determine claims. *See Butner v. United States*, 440 U.S. 48 (1979). In many cases, state law directs the bankruptcy court to contracts such as loan agreements, mortgages, and security agreements to determine the amount of claims, the accrual of interests and costs, the existence and priority of liens, and the like. Similarly, pre-petition agreements of the debtor may be relevant in determining whether a secured claim is adequately protected for various purposes during a bankruptcy case. *See, e.g.*, 11 U.S.C. §§ 361 and 362. For example, absence of insurance coverage for collateral may constitute lack of adequate protection of the secured claim, and provisions in loan documents regarding required insurance coverage may be instructive to the Court (although not binding) in determining the appropriate level of insurance to protect the interest of a secured creditor. Finally, a contract may represent a property interest, thus defining what is and is not property of the estate. For example, the estate may hold (or be subject to) a covenant running

with the land, represented by a written, recorded contract.  To the extent such a contract defines property of the estate it is obviously binding on the estate.

The foregoing general description of bankruptcy jurisdiction, the power of bankruptcy courts to enter final orders, and the treatment of pre-bankruptcy contracts during a case under title 11, are some of the most central tenets of bankruptcy law.  In this light, the Court turns to the arguments presented by the debtor in the present Motion.

Fannie Mae seeks a ruling that the Replacement Reserve is not property of the estate. Because Fannie Mae argues that the Replacement Reserve is not property of the estate, the debtor reasons that this Court has no jurisdiction to even consider the question.

The equitable jurisdiction of the bankruptcy court over property of the estate is the single most central component of bankruptcy jurisdiction.  The entirety of bankruptcy jurisprudence in the United States, including the Bankruptcy Act, the present Bankruptcy Code, and more than 200 years of case law including numerous Supreme Court decisions, hammers home the idea that bankruptcy is at its core an equitable proceeding dealing with a specific *res*, the bankruptcy estate.  There is nothing more core to the bankruptcy process than the determination of what is, and what is not, included in the bankruptcy estate.  *See Hamm v. McIntyre (In re McIntyre)*, 2013 Bankr. LEXIS 1689, at *13-14, *25 (Bankr. M.D. Ala. Mar. 8, 2013) (and cases cited therein).  Logically, it does not matter whether the Court is asked to determine that something is or is not part of the bankruptcy estate.  The way the question is presented is not important.  No matter how the matter is presented, and no matter whether the answer is that the property in question is or is not part of the estate, the result of answering the question will be to define more clearly what property is in fact subject to administration in the bankruptcy case.

If a debtor or party in interest seeks a ruling that property is not part of the bankruptcy estate, the debtor's argument is that the Court lacks subject matter jurisdiction

and cannot even address the question. But if a party seeks a ruling that property is included in the bankruptcy estate, then the debtor would posit that subject matter jurisdiction is present. It would seem that any objection to such a ruling would be a request for a ruling that the property is not property of the estate, thus terminating subject matter jurisdiction. Likewise, the debtor's view would require the Court to decline to rule on any motion for relief from the automatic stay under section 362 where it is argued that the property in question is not part of the estate. This is like arguing that the district court lacks jurisdiction to consider a motion to dismiss a complaint on the grounds that there is no federal question or diversity jurisdiction because, if the movant is correct, there is no jurisdiction over the cause. The absurdity of the debtor's argument is obvious.

The Court is equally perplexed by Fannie Mae's resort to arguing that the Court has "related to" jurisdiction over the question whether the Replacement Reserve is property of the bankruptcy estate. Fannie Mae points out that determining whether the Replacement Reserve is property of the estate will have an impact on administration of this case, thereby satisfying the traditional definition of "related to" jurisdiction. But of course all core matters also have an impact of administration of the bankruptcy case. The difference is that core matters are at the center of the bankruptcy process. There is literally nothing more core to the bankruptcy process than the determination of what is and is not part of the *res* that defines the center of bankruptcy jurisdiction.

The debtor is correct that if the Court is asked to determine a dispute between two non-debtors with regard to ownership of property, the Court has jurisdiction over the dispute only if the outcome will have an impact on administration of the estate. The debtor cites one case confirming that there is no jurisdiction at all where the outcome of the dispute has no impact on the debtor or its estate. *First State Bank of Wykoff v. Grell (In re Grell)*, 83 B.R. 652, 658

(Bankr. D. Minn. 1988). Importantly, in *Grell* the court does not even suggest it lacks jurisdiction to determine whether the assets at issue were in fact property of the estate. *Id.* The debtor cites another case holding that a dispute involving property of a partnership owned by a debtor was related to the bankruptcy case because the outcome would impact the size of a claim against the estate. *Cont'l Nat'l Bank v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1347 (11th Cir. 1999). Neither of those decisions is remarkable, or helpful here. The matter now before the Court presents a dispute between the debtor itself and a creditor with regard to whether specific property is included in the bankruptcy estate. The question is whether the debtor owns the property or whether Fannie Mae does. Either outcome obviously determines the extent of the bankruptcy estate.

The debtor argues that the complaint "lacks clarity as to whether [Fannie Mae] is seeking relief pursuant to Fed. R. Bankr. P. 7001(2) or 7001(9)." First, it is not necessary for a plaintiff to allege that it is seeking relief under any specific subsection of Bankruptcy Rule 7001, which governs what must be brought by complaint (adversary proceeding) rather than by motion (contested matter). In any case, it is obvious that Fannie Mae is seeking both a ruling with regard to an interest in property under subsection (2) and a declaratory judgment under subsection (9), and there is no reason a party may not seek such relief. Amazingly, the debtor argues that Fannie Mae "has not sought a declaratory judgment." Yet the title of the complaint, the allegations and argument presented in the complaint, and the request for relief clearly seek a declaratory judgment.

The debtor complains that the complaint "further attempts to improperly seek a declaration or determination based in part upon an alleged pre-petition breach of contract." Fannie Mae argues that because the debtor was in default under the loan documents, prior to the bankruptcy petition, Fannie Mae became the sole owner of the Replacement Reserve to the exclusion of the debtor. Although the loan documents in question do not support

12

Fannie Mae's contention, there is nothing improper about pointing to pre-bankruptcy agreements for a determination of the relative rights of the debtor and non-debtor parties with regard to property as of the petition date. It is indeed possible that a pre-bankruptcy contract, coupled with pre-bankruptcy conduct, may impact what is and is not included in property of the estate. The most obvious example is when a foreclosure is completed under non-bankruptcy law, prior to the order for relief, thereby denying the debtor ownership of property it previously held. Another common example is an escrow agreement fully performed prior to the filing of the bankruptcy case, so that the estate either gained or lost a property right.

The debtor argues that the question before the Court is not ripe for determination because the debtor's motion for an order requiring Fannie Mae to make disbursements from the Replacement Reserve has been resolved by agreement and is no longer pending. Yet the debtor itself, in the plan presently before the Court, seeks to use most of the Replacement Reserve immediately upon confirmation of the plan. The Court must determine whether the Replacement Reserve is property of the estate to determine whether the debtor has the power to use it under its plan. It is appropriate to make that determination ahead of confirmation because the Court's ruling may require amendment to the plan and such amendment may in turn require additional disclosure to creditors consistent with the requirements of section 1125. And if Fannie Mae is correct and the Replacement Reserve is not property of the estate at all, but is instead owned by Fannie Mae, then nothing should prevent Fannie Mae from exercising unfettered control over the Replacement Reserve. The question is properly before the Court at this time. There is an actual controversy between the debtor and Fannie Mae with regard to who owns the Replacement Reserve and that controversy is ripe.

The debtor argues that Fannie Mae is improperly attempting to pursue a claim for damages through an adversary proceeding. In the simplest terms, the complaint seeks a

declaration that the Replacement Reserve is not property of the estate, that Fannie Mae can apply the Replacement Reserve against its claim or, in the alternative, that Fannie Mae has a right of setoff against the Replacement Reserve. Each of these is a request for declaratory relief which requires the filing of an adversary complaint under Bankruptcy Rule 7001(9) and (2). Nothing in the complaint suggests that Fannie Mae seeks a money judgment. In any case, while it is not necessary to file an adversary proceeding to seek allowance of a claim, where a claim is parallel to matters presented in an adversary proceeding it may be presented through that procedure. Thus, while it did not do so, Fannie Mae could have sought allowance of its claim as part of this adversary proceeding. There is nothing improper about the procedural posture of this case.

In the complaint, in the alternative, Fannie Mae seeks a ruling that the Replacement Reserve is property of Fannie Mae, rather than the debtor, on the basis that the Georgia state court already ruled on the issue and this Court is bound by that ruling under the doctrine of *res judicata* and the Rooker-Feldman doctrine.[4] In its response, Fannie Mae argues that the Georgia state court found that the debtor was in default under the loan documents as amended by the settlement. Fannie Mae states: "The issue of the [Replacement Reserve] was undoubtedly adjudicated in the State Court action and the parties rights with respect thereto were wrapped up in the Term Sheet." The Court is unable to find any suggestion that the Georgia state court made a finding relevant to the question now before this Court. Indeed, there is not even a specific finding that the debtor was at the time in default under the loan documents. The most that can be said about the Georgia state court ruling is that the original provisions of the loan documents relating to the Replacement Reserve were reinstated with

---

[4] It appears that Fannie Mae intends to argue under the doctrine of collateral estoppel rather than *res judicata*. But it is obvious that the causes of action differ and that the argument presented here focuses on specific issues allegedly determined in the Georgia state court rather than the overall claim presented. However, even if couched in appropriate terms, no relief would be warranted.

minor changes having no impact on the question presented in the complaint here. Because there was no relevant finding, neither collateral estoppel nor the Rooker-Feldman doctrine apply in this case. Fannie Mae's request for relief on this ground will be denied.

The debtor argues that Fannie Mae is not entitled to a declaration with regard to a right to setoff. The debtor argues that this request contradicts the request that the Court declare that the Replacement Reserve is not property of the estate. This is obviously the case as the request for a declaration with regard to the right to setoff is stated in the alternative. Contrary to the debtor's suggestion, the Bankruptcy Rules incorporate the Federal Rules of Civil Procedure, which specifically permit pleading in the alternative. Fed. R. Bankr. P. 7008, incorporating Fed. R. Civ. P. 8(a)(3). The debtor argues that the complaint "contains no allegations that would support any right of [Fannie Mae] to any setoff or recoupment from the Replacement Reserve." This is plainly false. Fannie Mae alleges a pre-bankruptcy claim secured by substantially all assets of the debtor. Fannie Mae alleges a security interest in the Replacement Reserve itself which was funded by the debtor prior to the bankruptcy case as part of the same loan transaction. Fannie Mae need allege nothing more to support a claim for setoff under 11 U.S.C. § 553(a).

Lastly, the debtor argues that paragraphs 36 to 39 of the complaint should be stricken. In those paragraphs, Fannie Mae alleges defaults that occurred prior to this bankruptcy case but which Fannie Mae allegedly learned of after the petition date. Fannie Mae argues that such pre-bankruptcy defaults, along with other pre-bankruptcy defaults of which it provided contemporaneous written notice to the debtor, trigger provisions of the loan documents causing the Replacement Reserve to be solely the property of Fannie Mae. Those allegations directly relate to Fannie Mae's request for relief and are not due to be stricken. The Court makes no finding now as to whether the existence of such alleged defaults supports any of the relief requested by Fannie Mae in the complaint.

Both the debtor and Fannie Mae appear to assume that some or all of the covenants in the pre-bankruptcy loan documents are binding in one way or another during this bankruptcy case.  The loan documents are the source of Fannie Mae's claim in this case.  The Court may look to the loan documents (and other evidence) to determine the amount owed, whether the claim is secured, and the priority of any interest in collateral.  But the loan documents are not subject to assumption or rejection under section 365, and no provision of bankruptcy law makes the covenants in the loan documents binding in a present way against the debtor or Fannie Mae.  Unless Fannie Mae obtains relief from stay, it may not proceed to foreclose on the debtor's property, offset mutual obligations, or otherwise attempt to collect from the debtor.

Based on the documents now before the Court, it appears that the Replacement Reserve is property of the bankruptcy estate.  Fannie Mae holds only a perfected lien on the Replacement Reserve.  Even if the debtor defaulted under the loan documents prior to filing this case, Fannie Mae did not apply the Replacement Reserve in partial satisfaction of its claim as it might have done.  And the loan documents do not provide that the Replacement Reserve automatically becomes property of Fannie Mae upon a default by the debtor.  Indeed, as of the petition date the debtor retained a remainder interest in the Replacement Reserve, which would be returned to the debtor if Fannie Mae was paid in full.  On the other hand, the Replacement Reserve remains subject to a valid, perfected security interest.  The agreement entered into in connection with the Replacement Reserve contains a grant of a security interest in that fund, and perfection is obtained by possession.  Thus, based on the documents now before the Court, while the Replacement Reserve is property of the estate, the debtor may not use it unless Fannie Mae is accorded adequate protection, or the use is set out in a plan otherwise confirmable under 11 U.S.C. § 1129.  The Court makes no finding

in this regard as the matter has yet to be presented for summary judgment or tried, and the evidence presented may affect the Court's final ruling.

For the foregoing reasons, the Court hereby orders that the motion to dismiss [ECF No. 19] is GRANTED to the extent that the request for relief contained in paragraph ii.(b) on page 10 of the complaint is DISMISSED WITH PREJUDICE, and is DENIED in all other regards.

###

Copies Furnished To:

Eli DuBosar, Esq.

*Eli DuBosar, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and file a certificate of service.*